**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **EPHRIAM RODRIQUEZ,**<br><br>                                        Plaintiff,<br><br>**v.**<br><br>**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY (SEPTA)**,<br><br>                                        Defendant. | **CIVIL ACTION**<br><br>**NO. 20-3262** |

<u>**MEMORANDUM RE: DEFENDANT'S MOTION FOR**</u>
<u>**JUDGMENT AS A MATTER OF LAW**</u>

**Baylson, J.**                                                                          **November 2, 2023**

The present dispute arises from Plaintiff Ephriam Rodriquez's claim that Defendant Southeastern Pennsylvania Transportation Authority ("SEPTA") interfered with his rights under the Family and Medical Leave Act ("FMLA") (the "Interference Claim") and retaliated against him for exercising those same rights (the "Retaliation Claim"). A jury returned a verdict in favor of Rodriquez on the Interference Claim, and found damages of $20,000.00. The jury returned a verdict for SEPTA on the Retaliation Claim.

SEPTA has now moved for judgment as a matter of law under Fed. R. Civ. P. 50(b). For the reasons explained below, the Court will **GRANT** SEPTA's motion.

**A. Procedural History**

Plaintiff brought his Complaint on July 2, 2020. Compl. (ECF 1). Discovery progressed before the case was eventually reassigned to the undersigned. Order Dec. 2, 2022 (ECF 32). Around the same time, SEPTA moved for summary judgment, arguing that:

1. Rodriquez did not have a qualifying "serious health condition," as defined by applicable FMLA regulations (MSJ (ECF 23-2) at 10);

2. Rodriguez did not provide SEPTA with notice of his intention to take leave (id. at 13);

3. Rodriquez did not invoke his FMLA rights until after he had been fired (id. at 17-18);

4. Rodriquez could not show causation between his alleged June 8 discharge and his July 13 FMLA approval (id.);

5. SEPTA had a legitimate, non-retaliatory reason for his discharge (id. at 20-21); and

6. Rodriquez could not show SEPTA's legitimate reason for discharge was pretextual (id.).

Rodriquez responded (Resp. (ECF 29)), and SEPTA replied twice (Resp. in Support (ECF 31); Reply (ECF 34)). This Court denied summary judgment (Order, Feb. 21, 2023 (ECF 39)), and the matter proceeded to trial on June 5 and June 6, 2023.

### B. Testimony and Evidence Presented at Trial

Plaintiff Rodriquez suffers from severe migraines with auras. Tr. 6/5/23 (ECF 67) at 12:22-13:14. He began working for SEPTA in 2015. Id. at 5:23-6:4. After prior attendance issues, Rodriquez accumulated two negative attendance points on June 8, 2018, pushing him over the permitted limit. Id. at 11:13-12:14, 16:2-24, 27:22-28:5.

On June 26, 2018, SEPTA held an "informal hearing" in which the "proposed resolution" was "discharge." Id. at 30:4-18; Joint Exhibit 4. Rodriquez visited a physician regarding his migraines on July 3, 2018. Tr. 6/5/23 at 38:6-10. Rodriquez's doctor filled out the paperwork supporting his FMLA claim for migraines, which was submitted to SEPTA's third-party FMLA administrator. Id. at 38:21-40:20, 51:17-52:5; Joint Exhibit 7. On July 12, 2018, SEPTA held a formal hearing in which Rodriquez mentioned he thought he qualified for FMLA leave. Tr. 6/5/23 at 41:21-42:13. The hearing resulted in Rodriquez's termination being approved, but the final paperwork was not completed until later. Id. at 43:3-17; Joint Exhibit 8. On July 13, 2018, the third-party FMLA administrator approved Rodriquez for FMLA leave for the dates of June 28,

2018 until December 27, 2018.  Tr. 6/5/23 at 51:17-52:5; Joint Exhibit 7.  On July 16, 2018, the officer who oversaw the formal hearing completed the paperwork approving Rodriquez's discharge; Rodriquez stopped working for SEPTA the next day.  Tr. 6/5/23 at 52:20-53:1; Joint Exhibit 8.

At trial, in relevant part, Rodriquez testified that he had suffered from migraines all his life. Tr. 6/5/23 at 13:25-14:12.  He testified that he suffers from migraines as often as three times per month and that his migraines occur sporadically, last approximately a day or two, and that he is typically able to return to work a few days later.  Id. at 14:5-15.  He testified that he treats them by drinking ginger root tea, taking Tylenol, and avoiding foods that trigger his migraines.  Id. at 14:16-15:17.  However, Rodriquez acknowledged that, until a July 3, 2018 doctor's visit, he had never seen a health care provider for treatment for his migraines.  Id. at 112:11-113:6, 114:6-12, 114:21-115:6.

The evidence presented at trial showed that Rodriquez had missed several days of work because of "headaches" and "migraines."  Joint Exhibit 2; Tr. 6/5/23 at 12:15-21, 17:3-16.  These absences, in addition to other absences during his employment at SEPTA, resulted in Rodriquez accumulating the maximum number of negative attendance points allowed by SEPTA's attendance policy.  Tr. 6/5/23 at 11:13-12:14, 16:2-24, 27:22-28:5.  On June 8, 2018, Rodriquez was absent due to a migraine which resulted in him accumulating two additional absence points, triggering SEPTA to begin termination proceedings.  Id. at 27:2-24, 28:24-29:6; 30:4-18; 52:20-53:1.

At the conclusion of Rodriquez's case-in-chief, SEPTA moved for judgment as a matter of law regarding (in relevant part) Rodriquez's FMLA Interference Claim "on the basis that Mr. Rodriquez did not have a serious health condition at the time of the June 8th, 2018 absence." Tr. 6/6/23 (ECF 68) at 134:17-21.

SEPTA produced several witnesses in its own defense, who contradicted Rodriguez on a number of factual issues. By virtue of the jury's verdict in favor of Rodriguez on the Interference Claim, the jury obviously credited Rodriguez's testimony and rejected SEPTA's contrary testimony. Thus, this Court will consider the facts presented by Rodriguez on the Interference Claim as true and correct in the light most favorable to Rodriguez.

Because the jury found in favor of SEPTA on the Retaliation Claim, which is not the subject of any post-trial motions, the Court will not further discuss the Retaliation Claim.

## I.    SUMMARY OF ARGUMENTS

SEPTA now moves for Judgment as a Matter of Law under Fed. R. Civ. P. 50(b), arguing the jury's verdict finding that Rodriquez suffered from a "serious health condition" was unsupported by evidence. Mot. for JMOL (ECF 72-2) at 1. Specifically, SEPTA argues that Rodriquez failed to show that he attended two treatment visits to a health care provider in one year for his migraines, as required by the FMLA to establish the existence of a "chronic serious health" condition under 29 C.F.R. § 825.115(c). Id. at 1, 2 n.1. SEPTA argues that because Rodriquez only consulted a physician on July 3, 2018, after he had taken the absence, and only saw the physician once, there was no evidence that his migraines required "continuing treatment by a physician" and therefore the evidence did not support the conclusion that his migraines qualified as a chronic health condition at the time the leave was taken. Id. at 3, 6, 8. SEPTA argues that the requirements must be met before the leave is taken in order for the leave to qualify under the FMLA, and that the evidence presented at trial showed that had not happened. Id. at 7. SEPTA also argues that the Medical Certification (Joint Exhibit 6) shows that Rodriquez's physician determined that follow-up treatment appointments or part-time work or working on a reduced schedule would not be necessary, thereby "foreclos[ing] any finding that Rodriquez had a" chronic health condition. Id. at 8 (emphasis omitted).

4

Rodriguez responds, arguing that SEPTA's motion should be denied because testimony at trial supported the jury's verdict.  Resp. (ECF 76) at 1-2.  Rodriguez argues that the jury's verdict was supported by evidence that Rodriquez's healthcare provider certified that his migraines are a chronic health condition, and that SEPTA's third-party administrator approved Rodriquez for intermittent FMLA leave due to his migraines.  Id. at 2-5.  Rodriquez argues that under the FMLA and associated regulations, absences attributable to a chronic health condition can qualify for FMLA even though Rodriquez did not receive treatment from a provider during the absence.  Id. at 3 (citing Wegelin v. Reading Hospital & Medical Center, 909 F. Supp. 2d 421, 421, 426 (E.D. Pa. 2012)).  He argues that the Medical Certification presented to the jury (Joint Exhibit 6) satisfied all elements required to establish his claim, including the requirement that Rodriquez's migraines require semi-annual visits to a health care provider.  Id. at 4-5.  Rodriquez argues that the cases cited by SEPTA in support of its argument do not apply because in those cases, none of the plaintiffs obtained sufficient certification from a physician, whereas Rodriquez did, albeit after the leave at issue was taken.  Id. at 5-6.

Rodriquez also argues that the trial record supports the conclusion that Rodriquez's June 8, 2018 absence was caused by a migraine that qualified as a serious health condition under the FMLA.  Id. at 6-7.

## II.    STANDARD OF REVIEW

Rule 50(a) of the Federal Rules of Civil Procedure provides that after a party has been fully heard during a jury trial, a court may grant a motion for judgment as a matter of law if it determines that "a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party on that issue," and that, without a favorable finding on that issue, the party cannot maintain his claim under controlling law.  Fed. R. Civ. P. 50(a)(1).  If a court does not grant a motion for judgment as a matter of law under Rule 50(a), a movant may then "file a renewed motion for judgment as a

matter of law" within 28 days of the entry of judgment.  Fed. R. Civ. P. 50(b).  In determining whether to grant judgment as a matter of law, the court "must view the evidence in the light most favorable to the non-moving party, and determine whether the record contains the 'minimum quantum of evidence from which a jury might reasonably afford relief.'"  Glenn Distribs. Corp. v. Carlisle Plastics, Inc., 297 F.3d 294, 299 (3d Cir. 2002) (quoting Mosley v. Wilson, 102 F.3d 85, 89 (3d Cir. 1996)).  Indeed, a court may grant judgment as a matter of law "only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability."  LePage's, Inc. v. 3M, 324 F.3d 141, 145-46 (3d Cir. 2003) (citation omitted).

In this endeavor, "the court may not weigh evidence, determine the credibility of witnesses or substitute its version of the facts for that of the jury," but rather may grant a Rule 50 motion only "if upon review of the record it can be said as a matter of law that the verdict is not supported by legally sufficient evidence."  Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 691-92 (3d Cir. 1993); see also LePage's, 324 F.3d at 146 ("Review of the jury's verdict is limited to determining whether some evidence in the record supports the jury's verdict."); Glenn Distribs., 297 F.3d at 299 (stating that "the standard for granting summary judgment under Rule 56 'mirrors the standard for a directed verdict under Fed. R. Civ. P. 50(a)'") (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

## III.   ANALYSIS

To prevail on an FMLA interference claim, Rodriquez must prove that he was entitled to benefits under the FMLA, and that SEPTA denied him those benefits.  Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 401 (3d Cir. 2007).  Whether SEPTA denied Rodriquez benefits was not an issue preserved at trial and so will not be considered here.

To prove entitlement under the FMLA, Rodriquez must prove that:

(1) His migraines were a "serious health condition" as defined in the statute and the regulations promulgated under it;

(2) He gave appropriate notice of his need to be absent from work; and

(3) SEPTA interfered with his right to unpaid leave.

29 C.F.R. § 825.303; <u>Sarnowski</u>, 510 F.3d at 401-02.  Only the first element was challenged in SEPTA's Rule 50 motion.  Tr. 6/6/23 (ECF 68) at 134:17-21; Mot. for JMOL (ECF 72) at 1.

### A.  SEPTA Preserved this Issue for Rule 50(b) Purposes

Before reaching the merits of that challenge, however, the Court must consider Rodriguez's threshold assertion that SEPTA failed to preserve, via Rule 50(a) motion, the argument SEPTA now raises in its Rule 50(B) post-verdict motion—that Rodriguez necessarily failed to prove his FMLA Interference Claim because he "provided no evidence that his migraines required visits 'at least twice a year' with his health care provider," ECF 72-2 at 8, as required under applicable regulations, <u>see</u> 29 C.F.R. § 825.115(c)(1).

SEPTA, for its part, frames its current Rule 50(b) motion as "based on the fact that the undisputed evidence at trial established that Rodriquez's migraines failed to meet the definition of a 'Serious Health Condition' under [the FMLA] as of June 8, 2018."  ECF 80 at 2.  As such, SEPTA contends that it "unambiguously" raised this ground in its oral Rule 50(a) motion at the close of Rodriquez's case-in-chief, where SEPTA moved for "judgment as a matter of law on the FMLA interference claim, which is Count I, on the basis that Mr. Rodriquez did not have a serious health condition at the time of the June 8th, 2018 absence."  <u>Id.</u> (citing to Tr. 6/6/23 at 134:10-23).

Rodriguez "does not dispute that that specific argument was properly preserved in the trial record for purpose of SEPTA's Rule 50(b) motion" and therefore "agrees that SEPTA's argument that [Rodriquez's] migraines were not an FMLA qualifying serious health condition was raised as a basis for entering judgment [sic] as a matter of law on both of Plaintiff's claims under the

FMLA."  ECF 81 at 1-2.  He further argues, however, that there are actually "two aspects to SEPTA's Rule 50(b) argument."  Id. at 2.  Specifically, Rodriguez contends that SEPTA's Rule 50(b) motion improperly blends the following: "(1) [Rodriguez's] migraines were not an FMLA qualifying serious health condition, and (2), [even if they were, Rodriguez] did not have a serious health condition as of June 8, 2018," and that SEPTA did not adequately preserve the latter ground. Id.

Rodriguez's contention here is somewhat puzzling, given that SEPTA's Rule 50(a) motion clearly articulated that it targeted Rodriguez's condition "at the time of the June 8th, 2018 absence."  So Rodriguez's attempted delineation is unpersuasive.  Indeed, even if this Court were to construe Rodriguez's argument more favorably to be that SEPTA's Rule 50(a) motion was not "sufficiently specific to afford [Rodriguez] with an opportunity to cure possible defects in proof which otherwise might make its case legally insufficient," Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1173 (3d Cir. 1993), it remains unavailing.

True, the Third Circuit has long held that "[t]he specific grounds for a JNOV must be asserted in the motion for a directed verdict."  Bonjorno v. Kaiser Aluminum & Chem. Corp., 752 F.2d 802, 814 (3d Cir. 1984).  But SEPTA has satisfied that standard here, as SEPTA specifically flagged Rodriguez's lack of a "serious health condition" as the basis for its initial Rule 50(a) motion.  Moreover, this Court's subsequent jury instructions expressly explained that "a chronic serious health condition is one which … [r]equires periodic visits (at least twice a year) for treatment by a health care provider . . . ."  Jury Instructions, at p. 11.  So this Court, the jury, and Rodriguez were all on notice that (1) SEPTA had moved for a directed verdict on the grounds that Rodriguez did not have a qualifying serious health condition; and (2) federal regulations require an FMLA claimant to undergo periodic visits to so qualify.  See, e.g., Fineman v. Armstrong World

Indus., Inc., 980 F.2d 171, 184 (3d Cir. 1992) (noting that "'specificity' and notice-giving function of an assertion should be judged in context") (citation omitted). Thus, this is not a situation where merely "some interconnectedness" exists between the grounds for SEPTA's Rule 50(a) and 50(b) motions. Cf Kars 4 Kids Inc. v. Am. Can!, 8 F.4th 209, 220 (3d Cir. 2021). To the contrary, SEPTA targets precisely the same issue in both motions. Accordingly, this Court finds SEPTA's Rule 50(a) motion placed Rodriguez sufficiently "on notice" of the arguments SEPTA now raises in its current Rule 50(b) motion, Williams v. Runyon, 130 F.3d 568, 572 (3d Cir. 1997), and so the Court will consider the merits of that motion.

### B.  Rodriguez Failed to Prove a Qualifying Serious Chronic Health Condition

During trial, Rodriquez argued that his migraines would qualify under the FMLA because they are a "chronic condition." Tr. 6/6/23 at 158:25-159:14; Jury Verdict Form (ECF 65), at Question 1. Under 29 C.F.R. § 825.115(c), a "serious health condition involving continuing treatment by a health care provider" that would qualify for FMLA leave includes a "chronic condition[]." A "chronic condition" is defined as "any period of incapacity or treatment for such incapacity due to a chronic serious health condition." Id. A "chronic serious health condition" is one which:

(1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;

(2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

(3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

Id.  Absences due to a chronic condition qualify for FMLA leave "even though the employee . . . does not receive treatment from a health care provider during the absence, and even if the absence does not last more than three consecutive, full calendar days." Id. at § 825.115(f).

Viewing the evidence presented at trial in the light most favorable to Rodriquez, the evidence supports a finding that Rodriquez's migraines would "continue[] over an extended period of time." Id. at § 825.115(c)(2). Specifically, Rodriquez testified that he had suffered from migraines with auras for the majority of his life, and his employment records showed that he had missed numerous days of work due to "headache[s]" or migraines. Tr. 6/5/23 at 12:15-21, 13:25-14:12, 17:3-16; Joint Exhibit 2.

Similarly, the evidence supports a finding that Rodriquez's migraines are episodic rather than a continuing period of incapacity, see 29 C.F.R. § 825.115(c)(3), based on Rodriquez's testimony that his migraines occur sporadically, last approximately a day, and that he is typically able to return to work a few days later. Tr. 6/5/23 at 14:5-15.

     i.    <u>The Record is Absent of Evidence that Rodriguez Periodically Consulted a Health Care Provider, as Required under FMLA Regulations</u>

The only remaining question, therefore, is whether the evidence presented at trial supports a conclusion that Rodriquez's migraines "require[] periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider." 29 C.F.R. § 825.115(c)(1). Neither party requested, and the Court did not specifically include, a jury interrogatory on such periodic visits. However, the Court did provide the jury with the applicable regulation definition in its jury charge. That definition expressly set forth the periodic visit requirement, and neither party objected to the Court's charge. And the evidence is clear that Rodriquez had never visited a physician or health care provider for his migraines until July 3, 2018, after the June 8, 2018 absence, after the June 26, 2018 informal hearing, but before the July 17, 2018 termination. Tr. 6/5/23 at 112:11-113:6, 114:6-12, 114:21-115:6.

The question before this Court is whether a single doctor's visit, taken after the absence in question and after the initial adverse employment action but before termination of employment,

satisfies the regulatory requirement.  This is a question of law that should be decided by this Court.

Bonkowski v. Oberg Industries, Inc., 787 F.3d 190, 203 (3d Cir. 2015) (while juries make factual

findings, "questions of statutory and regulatory interpretation under the FMLA [are] questions of

law to be decided by the courts themselves.").

      ii.      Rodriguez Cannot Cite a Court Decision that Shows His Facts Satisfy the Law

The Third Circuit has not directly addressed this question.  However, every Pennsylvania

court that has addressed this issue appears to have come to the same conclusion: the FMLA and

its regulations require an employee to have received treatment from a health care provider before

the absence in question for that absence to qualify for FMLA leave due to a chronic condition.[1]

See, e.g., Isley v. Aker Phila. Shipyard, Inc., 275 F. Supp. 3d 620, 633-34 (E.D. Pa. 2017)

(McHugh, J.) ("at the time of his absences in February 2015, [plaintiff's] condition had not

'required periodic visits (defined as at least twice a year)' and therefore was not 'chronic' within

the meaning of § 825.111(c)(1)"); McDonnell v. Overhead Door Co., 2022 WL 402684, at *4

(M.D. Pa. Feb. 9, 2022) (Brann, J.) ("Because [the plaintiff] has not adduced evidence that he

visited a health care provider twice a year to treat his anxiety and depression, he has not shown

a chronic serious health condition."); Alkins v. Boeing Co., 2020 WL 42753, at *5 (E.D. Pa. Jan.

2, 2020) (Savage, J.) (holding that conditions without treatment from a health care provider were

not "chronic" within the meaning of § 825.115(c)); Watkins v. Blind and Vision Rehabilitation

---

[1] Rodriguez cites Wegelin v. Reading Hospital & Medical Center in support of his argument that "Section 825.115(f) means 'medical treatment need not have taken place immediately before or during the FMLA leave . . . .'" Resp. at 5 (citing 909 F. Supp. 2d 421, 426 (E.D. Pa. 2012) (Savage, J.)).  However, that case is not directly on point because Judge Savage applied the analysis necessary to determine whether the plaintiff qualified for the FMLA due to having an impairment that causes "a period of incapacity," not a "chronic health condition."  Id. at 425-27.  The opinion provides no guidance on the question of whether a chronic health condition requires treatment at any point before an employee takes FMLA leave, even if not "immediately before or during the FLMA leave."  Id. at 426.

Services of Pittsburgh, 2018 WL 4491162, at *5 (W.D. Pa. Sept. 19, 2018) (Cercone, J.) ("Here, plaintiff lacks sufficient evidence to satisfy the requirements of a chronic condition [because] plaintiff has not offered any evidence to support a finding that she made periodic visits to a health care provider"); Kauffman v. St. Mary Med. Ctr., 2014 WL 4682035, at *4-5 (E.D. Pa. Sept. 14, 2014) (Bartle, J.) (holding that where the plaintiff voiced a need for treatment but had not taken steps to see a health care provider, she failed to meet the elements for chronic health condition); Criscitello v. MHM Services, Inc., 2013 WL 4049724, at *5-6 (M.D. Pa. Aug. 9, 2013) (Bartle, J.) (holding that self-diagnosis and mere intent to seek treatment is not enough to establish the existence of a serious medical condition under the FMLA); ); cf Victorelli v. Shadyside Hosp., 128 F.3d 184, 189 (3d Cir. 1997) (holding that a plaintiff's peptic ulcer disease might "satisfy the test for a chronic serious health condition" because plaintiff had taken "multiple visits to [a doctor]" in the relevant time period).

Courts outside of Pennsylvania overwhelmingly agree.  See, e.g., Smith v. AS America, Inc., 829 F.3d 616, 622 (8th Cir. 2016) (ruling that two health care provider visits were required to have occurred at "the time that leave is requested or taken"); Pivac v. Component Servs. & Logistics, Inc., 570 F. App'x 899, 903 (8th Cir. 2014) (ruling that a "single isolated visit" for an ailment does not show that the condition required periodic visits under the FMLA); Hrdlicka v. General Motors LLC, 2022 WL 989339, at *9 (E.D. Mich. Mar. 31, 2022) (raising doubt that the plaintiff was entitled to FMLA leave where "[s]he never saw, let alone sought, any medical professionals for over eighteen months. . . . Rather, her first documented visit to any medical professional was October 8, 2019—nearly two months after she was given the attendance letter and six weeks after her termination") (emphasis original); Robles v. Medisys Health network, Inc., 2020 WL 3403191, at *15 (E.D.N.Y. June 19, 2020) (finding that plaintiff "does not adequately

allege that, on October 27, his condition was '[c]hronic,' as at that point he had undergone treatment only once in 2018"); Fitterer v. Washington Employment Sec. Dept., 2015 WL 4619648, at *11 (E.D. Wash. July 31, 2015) (finding the plaintiff had not established the existence of a chronic condition because "the undisputed record evidence indicates that [the p]laintiff was not in fact receiving continuing care for her alleged chronic migraines.").

The regulations state that a chronic health condition is one that "requires periodic visits" to a health care provider for treatment. This requirement stands even though 29 C.F.R. § 825.115(c) states that FMLA-covered absences for an established chronic serious health condition include both "a period of incapacity" and "treatment for such incapacity."

If treatment by a health care provider can be replaced by home remedies, then treatment from such a provider is not actually "required." The FMLA regulations make this clear:

> A regimen of continuing treatment that includes the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider, is not, by itself, sufficient to constitute a regimen of continuing treatment for the purposes of FMLA leave.

29 C.F.R § 825.113(c) (emphasis added). Thus, Rodriguez did not demonstrate that, at the time of the absence in question, his migraines "required" "treatment" from a doctor as defined by the relevant regulations. There is therefore insufficient evidence to support a finding that, at the time of the June 8, 2018 absence, Rodriquez's migraines qualified for FMLA leave.

iii.   The Jury's Decision was not Supported by Sufficient Evidence

The jury's decision may have been confused by the fact that Rodriquez later did see a physician, began receiving treatment for his migraines, and was certified as qualifying for the FMLA once he began receiving that treatment from his physician. Tr. 6/5/23 at 38:6-10, 51:17-52:5; Joint Exhibit 7. But the Court must look to the time of the absence to determine eligibility. Isley, 275 F. Supp. 3d. at 634 n.15 ("the operative timeframe for determining whether a condition

qualifies as a serious condition is the time that leave is taken") (citing <u>Navarro v. Pfizer Corp.</u>, 261 F.3d 90, 96 (1st Cir. 2001)); <u>Hansler v. Lehigh Valley Hosp. Network</u>, 798 F.3d 149, 157 (3d Cir. 2015) (same).  And the record shows that Rodriquez had never visited a physician for his migraines at the time of his June 8, 2018 absence.  Tr. 6/5/23 at 112:11-113:6, 114:6-12, 114:21-115:6.

Rodriquez's migraines may very well have always needed professional care for effective treatment.  However, Rodriquez's choice to forgo professional treatment and to instead use home remedies such as over-the-counter medication and ginger root tea, Tr. 6/5/23 at 14:16-15:17, undermines his claim before this Court.  While there is a hint of putting the cart before the horse in the mechanism of the FMLA and its regulations by requiring employees to go to the doctor before they can claim FMLA leave for the condition that required them to go to the doctor, that is the way the statute and its regulations were written, and so this Court is bound to uphold those statutory and regulatory requirements.  Future plaintiffs may take this case as a warning to take advantage of the benefits granted under the FMLA earlier and to seek out medical treatment sooner rather than later for their own medical and employment stability, as intended by the FMLA. 29 U.S.C. §§ 2601(a)(4), 2601(b)(2).

I.    **CONCLUSION**

For the foregoing reasons, SEPTA's motion for judgment as a matter of law shall be **GRANTED**.  Plaintiff's Motion for Attorney Fees, Costs, and Liquidated Damages (ECF 71) is necessarily **DENIED**.  An appropriate Order follows.

O:\CIVIL 20\20-3262 Rodriguez v. Septa\20cv3262 Memorandum re Motion for Judgment as Mtr of Law.docx